FIRST STATE SAVINGS BANK OF THREE RIVERS *v.*
McMURTRIE.

MUNICIPAL CORPORATIONS — OFFICERS — PUBLIO FUNDS — CARE—
LIABILITY.

On the issue whether a former city clerk was indebted to the
city for funds collected during his term of office, evidence
examined, and *held,* to show that at the time he deposited
funds conditionally, to be repaid him in case he should be
found not so indebted, he had already overpaid the city.

Appeal from St. Joseph; Yaple, J. Submitted June 8,
1906. (Docket No. 60.) Decided September 20, 1906.

Bill by the First State Savings Bank of Three Rivers
against Fred J. McMurtrie, John H. McMurtrie and the
city of Three Rivers to foreclose a lien upon certain certifi-
cates of stock. Defendants filed separate cross-bills pray-
ing for an accounting. From a decree for defendant Mc-
Murtrie, defendant city appeals. Affirmed.

*H. O. Bliss* and *H. P. Stewart,* for defendant city of
Three Rivers.

*B. E. & L. F. Andrews* and *Dallas Boudeman,* for
defendant McMurtrie.

MOORE, J. This is a proceeding to foreclose a lien upon
certain bank stock assigned to complainant by defendant
McMurtrie. Both defendants concede the complainant is
entitled to what it claims in the bill of complaint. The
real contest is between the two defendants. From a de-
cree in favor of one of them, the other appeals.

In the decree made by Judge Yaple there are state-
ments of fact which disclose the questions involved, and
for that reason we quote from it:

" In the answer filed by the city of Three Rivers,
it claimed the right to the said bank stock through

the assignment from said Fred J. McMurtrie to it to secure certain moneys which it alleged and claimed were due to it from said Fred J. McMurtrie, and it prayed the benefit of a cross-bill as against Fred J. McMurtrie, and that any balance on the sale of said stock, after satisfying the claim of said bank, should be turned over to said city upon any moneys which the court might find was owing by said Fred J. McMurtrie to said city of Three Rivers, and praying for an accounting between said city of Three Rivers and said Fred J. McMurtrie touching the amount remaining due to said city of Three Rivers from said Fred J. McMurtrie. In the answer filed by said Fred J. McMurtrie, he alleged, amongst other things, in substance, that as between himself and the city of Three Rivers he was not owing said city anything, and denied that said city had any interest whatever in said bank stock; that at the time when he assigned the bank stock to the city of Three Rivers, said city claimed that he was short in his accounts as city clerk of said city, and for moneys which had come into his hands as such clerk; that on account of ill health at the time, he was unable to examine the accounts and to determine whether or not there was anything owing to the said city on the aforesaid matters; that the city employed a bookkeeper to examine his account and said McMurtrie agreed with the city to pay any sum which he was owing (if any), to the city, and he claimed that he placed certain moneys in the hands of the city and assigned the bank stock to it to pay and secure any moneys that might be found on a future accounting to be due (if anything) from himself to the city. He further claimed that he was, in fact, owing said city nothing, or, if anything, only a small amount; that he had deposited or paid under this arrangement with the city several hundred dollars; that said city had refused to return him such money, or the bank stock assigned to it. He also prayed the benefit of a cross-bill for the purpose of having a surrender of said bank stock and a cancellation of the assignment of it, and for an accounting and repayment of the moneys which he had deposited with said bank for the purposes aforesaid. When this cause came to a hearing the contest was entirely between the said city of Three Rivers on the one hand, and said Fred J. McMurtrie upon the other, and evidence was taken covering several years, during which said McMurtrie was acting as clerk of said city, and the

said parties submitted to this court the determination of the question of whether or not the said Fred J. McMurtrie was, in fact, owing the city, and if so, how much, or whether the city was owing him for the moneys, or any part thereof, deposited by him with the city, and if so, how much, and whether or not the city had any claim upon the bank stock, and said parties submitted to the court the question of decreeing the amount to be paid from the one party to the other, in order to fully settle the said controversy between them, it being understood and agreed that the decree entered in this cause should settle all matters embraced in a certain action then pending in the circuit court for the said county of St. Joseph, wherein said Fred J. McMurtrie is plaintiff, and the said city of Three Rivers is defendant.   *   *   *

"The court sustains the claims generally of defendant Fred J. McMurtrie. It finds that under the arrangement made between himself and the city of Three Rivers, it was agreed that he would pay to or deposit with said city of Three Rivers to pay or secure the payment of any amounts of money which might be found to be owing by him to said city and said McMurtrie deposited with and paid to said city moneys to the amount in the aggregate of $1,359.70, and it was agreed by the said city of Three Rivers with said McMurtrie that if upon an investigation of the matters between said city and said McMurtrie, it was not found that said McMurtrie was owing said city the amount of money turned over to said city, then that he should be repaid by said city such an amount as was not shown that he was so owing."

Following the language we have quoted is an elaborate statement of the claims of the two defendants. The learned judge reached the conclusion that the city of Three Rivers was indebted to Mr. McMurtrie in the sum of $1,323.61, and made a decree accordingly. The record discloses that Mr. McMurtrie claimed all the time that he was not indebted to the city. The stock in controversy was assigned to the mayor. He was a witness in the case. He has the following to say of the arrangement when the payments were made and the stock assigned.

"Q. You testified once before in this matter, did you testify then that it was your understanding that there

was an arrangement that he should pay these amounts, and if they did not prove they were owing by him to the city, the city should repay them?

"*A.* Of course, that is true, there is no question about that."

It will be observed that the question involved is purely one of fact. It will also be observed that the trial was, in effect, a trial of the law case then pending as well as the chancery case. The hearing was in open court. The testimony was all taken before the circuit judge. We have had an exhaustive oral argument and have two carefully prepared briefs of each side.

The claim of Mr. McMurtrie's counsel is as follows:

|  | Water Rates. | Licenses. | Other Sources. | Taps, etc. | Totals. |
|---|---|---|---|---|---|
| 1894–5 | $1,649 47 | $14 00 | $72 09 | $114 00 | $1,849 56 |
| 1896–7 | 3,159 53 | 102 50 | 457 94 | 48 75 | 3,768 72 |
|  | $4,809 00 | $116 50 | $530 03 | $162 75 | $5,618 28 |

"Receipts."

"The foregoing was shown by the testimony of McMurtrie. The first period, that of 1894–5 covering the four upper items of this statement with the total of $1,849.56 was referred to on the trial as the "Herndon Regime" and included, as will be noted, the entire year of 1895 and a part of 1894, although until June 18th, 1895, when McMurtrie was made deputy for the collection of water rates, he was in no way chargeable with the matter at all as until that date it was the duty of other officials to receive money under the charter and not McMurtrie, he being simply clerk or recording officer and nothing more. The four lower items cover the second, that of 1896–7, with a total of $3,768.72. As before stated, the foregoing table No. 1 includes the amount collected by Mr. Herndon and for which he, and not McMurtrie, was responsible, and shows the sum of all receipts, both village and city, with which McMurtrie was connected or with which he had anything to do. The whole amount being as above $5,618.28.

"Statement No. 2 shows the credits to both Herndon and McMurtrie for the same periods as statement No. 1, and is as follows:

| | |
|---|---:|
| Receipts and Herndon's report | $1,781 80 |
| Check allowed McMurtrie | 6 55 |
| Sundry receipts hereafter noted | 457 94 |
| Sundry receipts payment to city hereafter given | 3,312 28 |
| Receipt | 47 71 |
| Receipt $10 and $4 in hand of city clerk | 14 00 |
| | $5,619 78 |

—or one dollar and a half too much, instead of a deficit."

Mr. Herndon was the successor to Secretary Lenhart as collector of water rates. Mr. McMurtrie, in Mr. Herndon's absence from the office, sometimes made collections.

The claim of counsel for the city is as follows:

"We maintain, therefore, that defendant, at the time his term of office as city clerk expired, was indebted to the city for the sums of money hereinbefore stated, viz.: For water rates, collected and not accounted for between November 1, 1895, and the time defendant went out of office, in April, 1897, as appears on a preceding page of this brief, $563.02; for water rates collected and not accounted for prior to November 1, 1895, when defendant was assisting James W. Herndon in collecting water rates, $334.52; for fees collected for taps and tapping and not accounted for by defendant, $51; for money received by defendant on orders drawn apparently for salary, but in excess of the amount of salary to which he was entitled, $206.25; for money received by him on orders drawn to Ihling Brothers & Everard and the Kalamazoo Publishing Company, as hereinbefore stated, $237.20; and for fees collected for licenses, not accounted for, as hereinbefore shown, $109.75. The total amount of the above items of indebtedness is $1,501.74. This amount we claim is established beyond controversy, and if the defendant is entitled to recover back from the city any sum of money whatever, he is entitled to recover only the difference between $1,670.69, the amount paid over by him during said investigation of his accounts, as hereinbefore shown, and the said $1,501.74, which is $168.95.

"Now we do not concede that defendant is entitled to recover anything against the city, but on the contrary, we contend that defendant is still indebted to the city for a large amount beyond the $1,670.69, paid over by him, and that the city is still entitled to hold a lien on said bank

stock. However, we realize that we have not been able to produce positive evidence showing actual appropriation by defendant beyond the above amount, and do not expect this court to grant us a decree on the strength of suspicious circumstances alone. * * *

" In any event the decree of the court below should be modified, and materially altered. The amount which the said city of Three Rivers is hereby ordered to pay back to the defendant, Fred J. McMurtrie, should be greatly reduced, and we insist that the said city of Three Rivers should not be required to pay to said Fred J. McMurtrie, any more money than $168.95."

We have quoted enough to show how disagreed the counsel are as to what the record contains. Notwithstanding the fact that the hearing involved the disposition of the law case as well as a chancery case, and was in open court, where the learned judge had the great advantage of hearing and seeing the witnesses, we do not base our conclusion as to what should be done upon those facts, but upon a careful examination of the voluminous record. There were a large number of witnesses sworn, among them Mr. Herndon and Mr. McMurtrie, the latter of whom was subjected to a long and severe cross-examination. As the question involved is one of fact, it would profit no one to set out the testimony in detail. We shall content ourselves with saying that the examination we have made leads us to the conclusion that when this stock was assigned Mr. McMurtrie had overpaid the city. The circuit judge rendered a decree that we are not inclined to disturb.

Decree affirmed, with costs.

CARPENTER, C. J., and MCALVAY, GRANT, and HOOKER, JJ., concurred.